**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

UNITED STATES OF AMERICA        :
                                :
            v.                  :        Case No. 2:11-CR-40
                                :
JOSEPH MANOR                    :
          Defendant             :

## OPINION and ORDER

The government has charged Defendant Joseph Manor with
knowing and intentional possession with intent to distribute
oxycodone and oxymorphone hydrochloride under 21 U.S.C. §§
841(a)(1) and 841(b)(1)(C).  In the present motion, Defendant
argues this Court must suppress evidence seized from his motel
room on April 28, 2011, including statements Defendant made to
police, $5,500 in cash found in his sweatpants pocket, and 293
pills found in his backpack.

## Statement of Facts

On April 26, 2011, Defendant Joseph Manor checked into room
238 at the Motel 6 in Colchester, Vermont.  Mot. to Supress, ECF
No. 16, 1.  On the morning of April 28, 2011, Motel 6 staff
called the Colchester Police to report significant short-term
foot traffic to room 238 the previous day.  Resp. in Opp'n to
Mot. to Suppress, ECF No. 19, 1.  The motel staff furthered
complained that foot traffic to room 238 had already begun on
the morning of April 28.  The staff told the Colchester police

that Defendant identified himself as Joseph Manor and provided a

New York State identification card.  The staff informed police

that another unidentified man was with Defendant when they

initially checked into the motel, and explained that either

Defendant or the unidentified man were present in the room at

all times.  The staff described Defendant as an African-America

male, about 6'2'' or taller, and weighing over 300 pounds.  *Id.*

at 1-2.

The Colchester Police submitted Defendant's name and date

of birth to the National Crime Index Center (NCIC).  The NCIC

revealed that Defendant has used the alternative name Joseph

Cablare, and has misdemeanor convictions in New York State for

Possession of Marijuana (1998), Sale of Marijuana (1999),

Possession of Marijuana (2000), Possession of a Controlled

Substance (2002), and Trespass (2009).  The record check also

revealed a 2002 charge, but not a conviction, for Criminal

Possession of a Weapon, Second Degree: Machine Gun.  *Id.* at 2.

After running Defendant's information in the NCIC database,

Detective Sergeant Charles Cole, Detective Sergeant Michael

Fish, and two uniformed police officers proceeded to investigate

the occupants of room 238.  Detective Fish knocked on the door

of room 238 and announced that he was there to perform

maintenance on the air conditioner.  *Id.*  Defendant then opened

the door dressed in a t-shirt, underwear, and socks.  Mot. to

Suppress 2.  While remaining in the hallway, Detective Fish
shook Defendant's hand and identified himself as a police
officer. He asked if the police could enter the motel room to
speak with Defendant.  Defendant agreed.  Resp. in Opp'n to Mot.
to Suppress 2.  Detective Cole and Fish entered the motel room,
and the two uniformed police officers remained in the hallway.
Resp. in Opp'n to Mot. to Suppress 2.  Defendant sat on the bed
while Detective Fish sat in a chair facing the bed.  The
Defendant was not restrained in any way.

   Detective Fish next explained that the police were present
"to ask for Manor's consent to search the motel room and
explained that Manor could refuse consent, at which point the
officers would apply for a search warrant."  *Id.* at 3.
Detective Fish asked if there were any firearms in the room, and
Defendant answered that there were not.  Detective Fish asked if
Defendant had any large quantities of U.S. currency, and
Defendant responded that he had around $1,600.  *Id.*

   After answering these initial questions, Defendant moved to
put on a pair of sweatpants because he was wearing only his
underwear.  Before Defendant was able to reach the pants,
Detective Fish asked Defendant for permission to check the pants
for firearms.  Defendant gave permission, and Detective Fish
patted the outside of the pants.  Detective Fish "did not feel
any firearms but could feet [sic] two large bundles of what I

thought might be money."  Affidavit of Michael Fish, ECF No. 16,

Ex. A, at ¶ 4.  Detective Fish asked if he could remove the

bundles from the pants, and Defendant again granted permission.

Resp. in Opp'n to Mot. to Suppress 3; *see also* Affidavit of

Michael Fish ¶ 4.  The bundles were removed and later identified

as totaling $5,500.  In response to the police's inquiries,

Defendant explained that he had such a large quantity of cash

because he came to Vermont to buy a car.  Resp. in Opp'n to Mot.

to Suppress 3.

   After the bundles of money were removed from the

sweatpants, the police further questioned Defendant.  Detective

Cole asked Defendant if he had ever been arrested and Defendant

replied "no."  Detective Cole then asked if Defendant had ever

used a different name, or been arrested under a different name,

and Defendant replied "no."  Detective Cole then produced

Defendant's criminal record and confronted Defendant with the

name "Joseph Cablare," at which point Defendant admitted he used

that alias when he was younger.  *Id.*  Detective Fish then asked

Defendant whether there were any drugs in the motel room.

Defendant responded by looking towards a backpack that was in

the open closet area and replying that he "had some marijuana

but I think I smoked it all."  *Id.*  Detective Fish then asked if

Defendant had any other drugs, and Defendant again looked at the

backpack and responded "no."  *Id.*

The officers did not observe any drug paraphernalia or any other evidence of drugs in the room.  There were no other people in the room.  The officers did not observe any weapons.  Mot. to Suppress 3.  Defendant is a 34 year old man who previously owned a business and the present record does not show that he has any cognitive defects.  Resp. in Opp'n to Mot. to Suppress 5.

At this point, Detective Fish asked Defendant for consent to search the room.  While reading a Consent to Search card to Defendant, Detective Fish observed Defendant's hands beginning to shake.  Resp. in Opp'n to Mot. to Suppress 4.  Detective Fish then asked Defendant if he wanted the police to obtain a search warrant for the room, and Defendant responded "yes."  The officers ordered Defendant into the hallway outside his room. Mot. to Suppress 3.  Detective Cole and another officer remained with Defendant and Detective Fish and another officer left and applied for a search warrant.  Resp. in Opp'n to Mot. to Suppress 4.  The officers monitoring Defendant told him that he was free to leave, but they would not allow him to reenter the motel room.  Mot. to Suppress 3-4.

Detective Fish's affidavit for the warrant provides the following facts: (1) the short-term foot traffic to room 238 on April 27-28, (2) Defendant's criminal record, including a conviction for possessing a firearm, (3) the large amount of currency found in Defendant's sweatpants pockets, (4)

Defendant's statement that he had smoked marijuana, (5) the description of Defendant alleged repeatedly looking towards the backpack when answering drug-related questions, and (6) Defendant's alleged statement "I had some marijuana but I think I smoked it all."  Mot. to Suppress 4; Resp. in Opp'n to Mot. to Suppress 12.  Judge Linda Levitt of the Vermont Superior Court granted the search warrant for the motel room by mid-morning on April 28, 2011.  Resp. in Opp'n to Mot. to Suppress 4.

Detective Fish returned with the warrant and provided a copy to Defendant.  Before conducting the search, Detective Fish asked if the items in the room belonged to Defendant.  Detective Fish specifically inquired if the backpack belonged to Defendant.  Defendant admitted he owned the backpack.  *Id.* Defendant was not restrained at the time these questions were presented to him.  Officers searched the backpack and found 293 pills of various types.  Eighty-five of the pills qualify as schedule II controlled substances.  Defendant denied the pills belonged to him.  Police recovered a wallet in the backpack containing Defendant's New York State identification card, and found clothing in the backpack consistent with Defendant's large physical stature.

<u>Discussion</u>

### I.    Consent to the Initial Entry

Defendant first argues that the police officers' initial entry into the motel room violated his constitutional rights under the Fourth Amendment.  Defendant specifically contends that he did not consent to the officers' initial entry into his motel room.

Police may conduct a search without probable cause or a warrant where the Defendant voluntarily consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  "The Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *United States v. Snype*, 441 F.3d 119, 130-31 (2d Cir. 2006) (quoting *Schneckloth*, 412 U.S. at 228).  "In determining whether a defendant's will was overborne," courts assess the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226.  These circumstances include age, education, intelligence, knowledge of constitutional rights, length of detention, the existence of repeated and prolonged questioning, and the existence of physical punishment, among other potential factors. *Id.*  The government bears the burden of proving voluntary consent by a preponderance of the evidence. *United States v. Isofia*, 370

7

F.3d 226, 230-31 (2d Cir. 2004).  "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."  *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (collecting cases).

The totality of the circumstances show Defendant consented to the initial entry.  Once Defendant answered his motel door, Detective Fish shook Defendant's hand and asked "if the police could enter the motel room to speak" with Defendant.  Resp. in Opp'n to Mot. to Suppress 2.  Defendant was apprised of his right to refuse consent, and Defendant agreed to the entry.  *Id.* at 3.  Defendant was not threatened or coerced and police did not draw their weapons.  At the hearing, Defendant presented no evidence, and thus there is no basis for concluding that Defendant's will to refuse entry was overborn by the police in any way.  The totality of the circumstances show that Defendant voluntarily consented to the officers' initial entry into the motel room.

*II.  Consent to the Search of the Pocket*

Defendant also argues that the police violated his constitutional rights under the Fourth Amendment by searching his sweatpants.  Defendant contends that he did not voluntarily consent to the removal of the bundles of cash from his sweatpants pockets.

8

The totality of the circumstances show that Defendant consented to the removal of the bundles of cash from his pockets.  When Defendant initially reached for his sweatpants, Detective Fish asked Defendant for permission to check the sweatpants for firearms for officer safety reasons.  Resp. in Opp'n to Mot. to Suppress 3.  Defendant explicitly consented to the pat down of his sweatpants.  Detective Fish "did not feel any firearms but could feet [sic] two large bundles of what I thought might be money."  Affidavit of Michael Fish, ECF No. 16, Ex. A, ¶ 4.  Detective Fish asked if he could remove the bundles from the pants, and Defendant agreed.  Resp. in Opp'n to Mot. to Suppress 3; *see also* Affidavit of Michael Fish ¶ 4.  Defendant was not handcuffed or explicitly threatened, and police did not draw their weapons.  Defendant presented no evidence at the hearing, and thus there is no basis for concluding that Defendant's will to refuse the search was overborn by the police.  The government has carried its burden to show by preponderance that Defendant voluntarily consented to the removal of the bundles from his sweatpants pockets.

### III. Review of the Search Warrant

Defendant asserts that the search warrant contained both inaccurate information and information obtained by violating Defendant's constitutional rights, and therefore that evidence

seized as a result of the warrant must be suppressed.  Mot. to

Suppress 11.

The Fourth Amendment requires search warrants to be based

upon probable cause.  U.S. Const. amend. IV.  When determining

whether probable cause exists to issue a warrant, the judge must

assess whether "based on the totality of the circumstances set

forth in the affidavit, there is a fair probability that

evidence of a crime will be found in a particular location."

*United States v. Evans*, No. 2:07-CR-34, 2008 WL 1858897, at *3

(D. Vt. Apr. 24, 2008) (citing *Illinois v. Gates*, 462 U.S. 213,

238 (1983)).  "In reviewing a search warrant, substantial

deference should be paid to the issuing magistrate's

determination of probable cause."  *Id.* (citing *United States v.*

*Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980) (per curiam)).  Review

of probable cause must be based upon the four corners of the

affidavit.  *United States v. Falso*, 544 F.3d 110, 122 (2d Cir.

2008).  "Close cases should be resolved by upholding the

warrant."  *Evans*, 2008 WL 1858897, at *3 (citation omitted).  A

warrant should be upheld as long as the issuing judge had a

substantial basis for concluding that there was probable cause.

*Id.*

At the hearing, the government conceded that Defendant has

never been convicted of a firearms charge.  This error is of no

matter.  Even without the firearms conviction, this Court would

note that it would have had no reservations in finding probable cause based upon Detective Fish's affidavit. The motel staff's complaints about heavy foot traffic to Defendant's room, the $5,500 in cash, Defendant's statements about recent drug use, and the officers' observations of Defendant's behavior when answering questions clearly show that the issuing judge had a substantial basis for concluding that there was probable cause that evidence of a crime would be found in Defendant's motel room. The warrant is upheld.

For the above reasons, Defendant's motion to suppress is **denied**.

Dated at Burlington, in the District of Vermont, this 6th day of December, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge